UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| CACHET FINANCIAL SOLUTIONS, INC., a Minnesota Corporation, individually and on behalf of all others similarly situated, | Case No. 14-CV-4851 (PJS/HB) |
| Plaintiff, | ORDER |
| v. | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., a Delaware Corporation; and SENTINEL INSURANCE COMPANY, LTD., a Connecticut Corporation, | |
| Defendants. | |
| | |
| A BETTER WIRELESS, NISP, LLC, a Minnesota Limited Liability Company, | Case No. 15-CV-0116 (PJS/HB) |
| Plaintiff, | |
| v. | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC., a Delaware Corporation; and HARTFORD CASUALTY INSURANCE COMPANY, an Indiana Corporation, | |
| Defendants. | |

---

Joseph C. Bourne, Daniel E. Gustafson, and Karla M. Gluek, GUSTAFSON
GLUEK PLLC; and Charles S. Zimmerman, J. Gordon Rudd, Jr., and David
Cialkowsi, ZIMMERMAN REED, PLLP, for plaintiff Cachet Financial
Solutions, Inc.

Michael M. Lafeber, Scott M. Flaherty, and Michael M. Sawers, BRIGGS AND
MORGAN, P.A., for plaintiff A Better Wireless, NISP, LLC.

Ann Kathryn Johnston, BERGER KAHN; Anthony T. Eliseuson, DENTONS US
LLP; and Scott G. Johnson and Anne M. Lockner, ROBINS KAPLAN LLP,
for defendants.

Plaintiffs Cachet Financial Solutions, Inc. ("Cachet") and A Better Wireless, NISP,

LLC ("ABW") were insured by companies affiliated with defendant The Hartford

Financial Services Group, Inc. (collectively "Hartford").  Both Cachet and ABW were

sued for using another company's intellectual property in their advertisements.  Both

tendered the defense of those lawsuits to Hartford.  In both cases, Hartford declined to

defend or indemnify.

Cachet and ABW brought these coverage actions against Hartford, alleging that

Hartford breached the terms of the insurance policies when it refused to defend or

indemnify its insureds in connection with the underlying actions.  Hartford has moved

to dismiss Cachet's and ABW's complaints, arguing that the insurance policies are clear

and that, under the clear terms of the policies, Hartford has no duty to defend or

indemnify either Cachet or ABW.  After carefully examining the policies, the Court

concludes that they are ambiguous, that those ambiguities must be construed in favor of Cachet and ABW, and that Hartford's motion must therefore be denied.

## I.  BACKGROUND

### A.  The Underlying Litigation

Cachet is a Minnesota corporation that develops and sells technology that allows the owners of smart phones and other mobile devices to use those devices to engage in financial transactions.  Cachet[1] ECF No. 38 (Compl.) ¶ 2; *About*, Cachet Financial Solutions, http://www.cachetfinancial.com/about (last visited Feb. 5, 2016).  ABW is a Minnesota corporation that offers high-speed broadband internet service in rural areas. ABW ECF No. 23 (Compl.) ¶ 1; *About Us*, A Better Wireless, http://www.abetterwireless.com/about_us.html (last visited Feb. 5, 2016).

Cachet was sued for trademark infringement, passing off, and unfair competition after it used another company's intellectual property in its advertisements.  Cachet Compl. ¶¶ 41-44.  ABW was sued for trademark infringement, trade-dress infringement, and defamation after it used another company's intellectual property in its advertisements and on its website.  ABW Compl. ¶¶ 44-49.

Cachet and ABW were each insured under business-liability and umbrella policies issued by Hartford.  Cachet Compl. ¶ 40; ABW Compl. ¶ 43.  Cachet and ABW

---

[1]Citations including "Cachet" refer to documents filed in Case No. 14-CV-4851; citations including "ABW" refer to documents filed in Case No. 15-CV-0116.

asked Hartford to defend the lawsuits against them.  Cachet Compl. ¶ 47; ABW Compl.

¶ 50.  Hartford refused to defend or indemnify either Cachet or ABW.  Cachet Compl.

¶¶ 48-50; ABW Compl. ¶¶ 51-52.  In response, Cachet and ABW brought these coverage

actions.

### B.  The Policies

The two business-liability policies involved in these coverage actions are

materially identical, as are the two umbrella policies.  Those policies and the

amendments to those policies contain a rather perplexing series of grants of coverage,

exclusions from coverage, and exceptions to exclusions from coverage.  The coverage

afforded to "personal and advertising injury" is particularly difficult to discern.

### 1.  The Business-Liability Policy

The business-liability policy begins with a grant of coverage, which includes

broad coverage for personal and advertising injury:

> We will pay those sums that the insured becomes legally
> obligated to pay as damages because of . . . "personal and
> advertising injury" to which this insurance applies.  We will
> have the right and duty to defend the insured against any
> "suit" seeking those damages.

Policy[2] at 97, § A.1.a.

---

[2]Cachet ECF No. 46-1 and ABW ECF No. 45-1 reproduce Cachet's and ABW's
insurance policies, which (as noted) are materially identical.

In the grant of coverage—and throughout the business-liability policy—the phrase "personal and advertising injury" appears in quotation marks.  The business-liability policy explains that "words and phrases that appear in quotation marks"—such as the phrase "personal and advertising injury"—"have special meaning," and that the reader can find that "special meaning" in the "Definitions" section of the policy.  *Id.* at 97.  (The umbrella policy contains a similar provision.  *See id.* at 21.)  Turning to the "Definitions" section, the reader finds that "personal and advertising injury" is defined to include (among other things) false arrest, detention, or imprisonment; malicious prosecution; wrongful eviction or entry; "[c]opying, in your 'advertisement', a person's or organization's 'advertising idea' or style of 'advertisement'"; and "[i]nfringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement.'"  *Id.* at 118-19, § G.17.

The business-liability policy then cuts back on the initially broad grant of coverage for personal and advertising injury.  Specifically, the business-liability policy provides that coverage for personal and advertising injury does *not* include coverage of claims "[a]rising out of any violation of any intellectual property rights such as . . . patent [or] trademark" rights.  *Id.* at 104, § B.1.p(7).  An important endorsement to the business-liability policy (the "SS50501201 Endorsement") further restricts coverage for

personal and advertising injury.  This endorsement—the first of two provisions whose

meaning is disputed by the parties—provides:

**PERSONAL AND ADVERTISING INJURY EXCLUSION
– LIMITED**

\*   \*   \*

This insurance does not apply to "personal and advertising injury" and none of the references to "personal and advertising injury" in the policy apply.

This exclusion does not apply to "personal and advertising injury" arising out of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution; or

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies . . . .

*Id.* at 177.

2.  The Umbrella Policy

The umbrella policy incorporates the definitions provided in the business-

liability policy, *id.* at 32, § VII, including the definition of "personal and advertising

injury" (a phrase that appears in quotations throughout the umbrella policy).  The

umbrella policy initially provides that Hartford will defend suits for personal and

advertising injuries "[f]or which no coverage is provided under any 'underlying

insurance'; or [f]or which the underlying limits of any 'underlying insurance' policy have been exhausted solely by payments of 'damages' . . . ."  *Id.* at 25-26, § II.A.  But then the umbrella policy limits that coverage through "Exclusion B.4," the second of the two provisions whose meaning is disputed by the parties.

Exclusion B.4 initially provides a broad exclusion—it says that the umbrella policy does not provide *any* coverage for "[p]ersonal and advertising injury"—and then provides an exception to that exclusion.  Specifically, Exclusion B.4 provides:

**B.** **Exclusions**

This policy does not apply to:

\*   \*   \*

**4.** **Personal and Advertising Injury**

"Personal and advertising injury".

**EXCEPTION**

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

*Id.* at 21-23, § I.B.4.

3.  The Dispute

The parties agree that none of the claims asserted against Cachet and ABW in the underlying lawsuits are covered by the *business-liability* policy, but the parties dispute

whether any of those claims is covered by the *umbrella* policy.  The dispute over the

coverage afforded under the umbrella policy comprises two separate disputes:  First,

the parties dispute whether the claims against Cachet and ABW fall within the coverage

clause of the umbrella policy—a dispute that (for reasons that will be explained below)

turns on whether the SS50501201 Endorsement changes the definition of "personal and

advertising injury" in the business-liability policy.  Second, assuming that the claims

against Cachet and ABW fall within the coverage clause of the umbrella policy, the

parties dispute whether that coverage is eliminated by Exclusion B.4.

The Court now turns to the parties' arguments.

## II.  ANALYSIS

### A.  Standard of Review

In ruling on a motion to dismiss for failure to state a claim, the Court must accept

as true all of the factual allegations in the complaint and draw all reasonable inferences

in the plaintiff's favor.  *See, e.g., Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir.

2008).  Ordinarily, if the parties present—and the Court considers—matters outside of

the pleadings, the motion must be treated as a motion for summary judgment.  Fed. R.

Civ. P. 12(d).  But the Court may consider materials that are necessarily embraced by

the complaint (such as the insurance policies at issue in these lawsuits) without

converting the motion into one for summary judgment.  *See Mattes v. ABC Plastics, Inc.*,

323 F.3d 695, 697 n.4 (8th Cir. 2003); *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F. Supp. 1148, 1152 (D. Minn. 1997).

Under Minnesota law, insurance policies "are to be interpreted according to both plain, ordinary sense and what a reasonable person in the position of the insured would have understood the words to mean." *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 634 (Minn. 2013) (quoting *Farmers Home Mut. Ins. v. Lill*, 831 N.W.2d 628, 637 (Minn. 1983)). If possible, policies should be interpreted to give effect to all of their provisions, and interpretations that would render any provision meaningless should be avoided. *See Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013) (citing *Wyatt v. Wyatt*, 58 N.W.2d 873, 875 (Minn. 1953)). When an insurance policy has been drafted by the insurer (as is the case here), ambiguities are resolved against that insurer. *See Eng'g & Constr. Innovations*, 825 N.W.2d at 705; *Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000); *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960). "Language in a policy is ambiguous if it is susceptible to two or more reasonable interpretations." *Wolters*, 831 N.W.2d at 636 (citing *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997)).

### B. Umbrella Policy

As noted, the parties agree that none of the claims that were asserted against Cachet and ABW in the underlying lawsuits are covered by the business-liability policy.

The claims asserted against Cachet and ABW all arise out of alleged trademark infringement, and the business-liability policy excludes coverage of all claims "[a]rising out of any violation of any intellectual property rights such as . . . patent [or] trademark" rights. *Id*. at 104, § B.1.p(7).  If that were not enough, the SS50501201 Endorsement eliminates *all* coverage for claims of "personal and advertising injury," save for claims of false arrest, malicious prosecution, and wrongful eviction. *Id.* at 177. No such claim was brought against either Cachet or ABW.

What the parties dispute is whether any of the claims against Cachet and ABW are covered by the umbrella policy.  Resolving this dispute requires the Court to answer two questions:  First, do any of the claims asserted against Cachet and ABW fall within the grant of coverage of the umbrella policy?  Second, if any claim falls within the coverage clause, is coverage of that claim then eliminated by Exclusion B.4?  The Court will address those questions in turn.

### 1.  Grant of Coverage

Insofar as it is relevant to this litigation, the umbrella policy's coverage clause provides as follows:

> A.     With respect to . . . "personal and advertising injury"
> to which this insurance applies . . .
>
> 1.      For which no coverage is provided
> under any "underlying insurance"; or

2.    For which the underlying limits of any
"underlying insurance" policy have
been exhausted solely by payments of
"damages" because of "occurrences"
during the "policy period":

We:

1.    Will have the right and the duty to
defend any "suit" against the "insured"
seeking "damages" on account
thereof . . . .

Policy at 25-26, § II(A).

The parties agree on this much:  The grant of coverage includes claims arising

out of "personal and advertising injury."  That phrase appears in quotation marks.

Under § VII of the umbrella policy, "the words or phrases that appear in quotation

marks within this policy shall follow the definitions of the applicable 'underlying

insurance' policy."  *Id.* at 32, § VII.  Therefore, "personal and advertising injury" has the

same meaning in the umbrella policy as it does in the business-liability policy.

Here is where the parties disagree:  Cachet and ABW contend that, to ascertain

what "personal and advertising injury" means in the business-liability policy, one

should look at the definitions section of that policy (entitled "Liability and Medical

Expenses Definitions").  *Id.* at 116, § G.  That section provides in relevant part:

17.    "Personal and advertising injury" means injury . . .
arising out of one or more of the following offenses:

-11-

      a.        False arrest, detention or imprisonment;

      b.        Malicious prosecution;

*　*　*

      f.        Copying, in your "advertisement," a person's or organization's "advertising idea" or style of "advertisement";

      g.        Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" . . . .

*Id.* at 118-19, § G.17.  Thus, say Cachet and ABW, the coverage clause of the umbrella policy encompasses all of these types of claims, which include the claims made in the underlying litigation against Cachet and ABW.  (Those were claims that Cachet and ABW copied in their advertisements another organization's advertising idea or style of advertisement.)

     Hartford disagrees.  According to Hartford, to ascertain what "personal and advertising injury" means in the business-liability policy, one should look not at the definitions section of that policy, but instead at the SS50501201 Endorsement.  Again, that endorsement provides:

## PERSONAL AND ADVERTISING INJURY EXCLUSION
## – LIMITED

\*   \*   \*

This insurance does not apply to "personal and advertising injury" and none of the references to "personal and advertising injury" in the policy apply.

This exclusion does not apply to "personal and advertising injury" arising out of the following offenses:

a.      False arrest, detention or imprisonment;

b.      Malicious prosecution; or

c.      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies . . . .

*Id.* at 177.

Hartford reads the first clause of the SS50501201 Endorsement—and, in particular, the phrase "none of the references to 'personal and advertising injury' in the policy apply"—to wipe out each and every reference to "personal and advertising injury" in the policy, including the *definition* of "personal and advertising injury" in the definitions section of the policy. Then, says Hartford, the second clause of the SS50501201 Endorsement provides that the first clause does not apply to "personal and advertising injury" arising out of false arrest, malicious prosecution, and wrongful eviction. Thus, by virtue of the second clause, the *definition* of "personal and

-13-

advertising injury" in the definitions clause springs back to life, but only insofar as it defines "personal and advertising injury" to mean false arrest, malicious prosecution, and wrongful eviction.

As Hartford would have it, then, by virtue of the SS50501201 Endorsement, the business-liability policy *defines* "personal and advertising" injury to mean only false arrest, malicious prosecution, and wrongful eviction. As a result, the coverage clause of the umbrella policy extends only to those three types of claims. And since none of those types of claims were brought against Cachet or ABW in the underlying actions, Hartford had no duty to defend or indemnify Cachet or ABW under the umbrella policy.

Hartford's interpretation of the SS50501201 Endorsement is reasonable, but it suffers from a couple of problems:

First, the SS50501201 Endorsement does not on first read (or even on second or third read) appear to have anything to do with the way that "personal and advertising injury" is *defined* in the business-liability policy. The endorsement is explicitly labeled as an "exclusion"—that is, as a provision that cuts out some of the coverage otherwise afforded under the policy—rather than as an amendment to a definition of a term that is used throughout the policy. The SS50501201 Endorsement does not use the word "define" or "definition" or any similar word. The SS50501201 Endorsement does not

even refer to the definitions section of the policy, much less to the precise definition of "personal and advertising injury."

Second, if (as Hartford argues) the first sentence of the SS50501201 Endorsement obliterated each and every "reference" to "personal and advertising injury"—*including the definition*—then the first sentence would essentially "self destruct," as it would invoke a term in quotation marks for which there was no definition.  And more importantly, if the *first* sentence wiped out the definition of "personal and advertising injury," then the *second* sentence— which begins with the words "[t]his exclusion does not apply to 'personal and advertising injury' arising out of the following offenses . . ."—would be nonsensical, as it would invoke (in quotation marks) a phrase that has no definition (because that definition had been wiped out by the first sentence).


Cachet and ABW offer an alternative reading of the SS50501201 Endorsement, a reading that is also reasonable but flawed.  Cachet and ABW read the endorsement as a straightforward exclusion of coverage, followed by an exception to that exclusion (similar to the structure of Exclusion B.4 in the umbrella policy).  After all, they point out, the endorsement is entitled "PERSONAL AND ADVERTISING INJURY EXCLUSION – LIMITED," signaling that the endorsement provides an "exclusion" and then a "limit[]" on that exclusion.  According to Cachet and ABW, the first sentence

excludes coverage for all personal and advertising injury, and then the second sentence

excepts from that exclusion certain types of personal and advertising injury.  But the

*definition* of "personal and advertising injury" remains unchanged, as is evident from

the fact that the phrase is used (in quotations) throughout the endorsement.

The problem with Cachet's and ABW's reading of the SS50501201 Endorsement

is that it renders meaningless the second half of the first sentence.  Again, Cachet and

ABW read the first sentence to do nothing more than exclude coverage for personal and

advertising injury.  But that is accomplished by the first half of the sentence:  "This

insurance does not apply to 'personal and advertising injury' . . . ."  What, then, is the

purpose of the second half:  ". . . and none of the references to 'personal and advertising

injury' in the policy apply"?  Cachet and ABW have no answer.  Courts generally avoid

interpreting insurance policies in ways that make provisions redundant.  *See Eng'g &*

*Constr. Innovations*, 825 N.W.2d at 705.

Moreover, the first sentence of the SS50501201 Endorsement is not written like a

typical exclusion.  A typical exclusion simply says that a particular type of claim is not

covered under the policy.  But the SS50501201 Endorsement goes further and says that

"none of the references to 'personal and advertising injury' in the policy apply."  This

clause is poorly written ("apply" to *what*?), but it is also unusual, and it must have some

purpose.

In short, each party's interpretation of the SS50501201 Endorsement is reasonable but problematic.  When, as here, a provision of an insurance policy is susceptible to two reasonable interpretations, that provision is ambiguous, and that ambiguity must be construed against the drafter.  *See Wolters*, 831 N.W.2d at 636; *Eng'g & Constr. Innovations*, 825 N.W.2d at 705; *Nathe Bros.*, 615 N.W.2d at 344; *Bobich*, 104 N.W.2d at 24. The Court therefore concludes that the coverage clause of the umbrella policy covers everything that is defined as "personal and advertising injury" in ¶ 17 of the definitions section of the business-liability policy, including injury arising out of "[c]opying, in your 'advertisement,' a person's or organization's 'advertising idea' or style of 'advertisement'" and "[i]nfringement of copyright, slogan, or title of any literary or artistic work, in your 'advertisement.'"  Policy at 118-19, § G.17.

2.  Exclusion B.4

The parties next dispute the meaning of Exclusion B.4 in the umbrella policy. Again, that exclusion provides:

> **B.**    **Exclusions**
>
> This [umbrella] policy does not apply to:
>
> *    *    *
>
> **4.**    **Personal and Advertising Injury**
>
> "Personal and advertising injury".

-17-

**EXCEPTION**

> This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

Policy at 21-23, § I.B.4.

The parties agree that the *first* part of Exclusion B.4—the "exclusionary" part—means, in essence, "whatever coverage is provided for personal and advertising injury under the coverage clause is completely wiped out by this exclusion."  What the parties dispute is the extent to which the *second* part of Exclusion B.4—labeled "Exception"—preserves coverage that would otherwise be wiped out by the first part.

Hartford reads the exception to say, in essence, "this exclusion does not wipe out coverage for a claim for personal and advertising injury if the underlying insurance covers that claim."  Thus, says Hartford, Exclusion B.4 (read as a whole) makes clear that the umbrella policy provides follow-form coverage for personal and advertising injury.  A claim for personal and advertising injury is covered under the umbrella policy if that claim is covered under the business-liability policy, and a claim for personal and advertising injury is not covered under the umbrella policy if that claim is not covered under the business-liability policy.

As Cachet and ABW point out, however, that is not what Exclusion B.4 says.  The exception in Exclusion B.4 provides that "[t]his exclusion does not apply if 'underlying

insurance' is applicable to 'personal and advertising injury'"—that is, to *any* type of

personal and advertising injury— "and to claims arising out of that 'personal and

advertising injury'"—that is, to *any* type of claim arising out of *any* type of personal and

advertising injury.  Exclusion B.4 does *not* say that "[t]his exclusion does not apply if

'underlying insurance' is applicable to *the* 'personal and advertising injury'" or "to *the*

*claim* arising out of that 'personal and advertising injury.'"  In this case, then, the

umbrella policy covers the claims against Cachet and ABW because (1) the business-

liability policy indisputably applies to *some* "personal and advertising injury" and

(2) the business-liability policy indisputably applies to *some* claims arising out of that

"personal and advertising injury'"—not to the trademark claims against Cachet and

ABW, but to false-arrest, malicious-prosecution, and other types of claims arising out of

personal and advertising injury.

This literal reading of Exclusion B.4 was embraced by the Washington Court of

Appeals in *Australia Unlimited, Inc. v. Hartford Casualty Insurance Co.*, 198 P.3d 514

(Wash. Ct. App. 2008).  The relevant provisions of the umbrella policy in *Australia*

*Unlimited* (including Exclusion B.4) were materially identical to the relevant provisions

of the umbrella policies that covered Cachet and ABW.  The Washington court's

analysis was identical to this Court's analysis in the preceding paragraph:

> . . . [The insured] reads the second provision of the exception
> to mean that the underlying insurance must cover claims

> arising out of that category of offenses defined as "personal
> and advertising injury."  Even though the underlying
> insurance here admittedly does not cover intellectual
> property claims [such as those made against the insured],
> the underlying insurance covers *other* personal and
> advertising injury claims.  The exception only requires that
> the underlying insurance be applicable to *some* claims arising
> out of the personal and advertising injury category.  It does
> not say that the underlying insurance must apply to "the"
> (specific) claim, it only states that underlying insurance must
> be applicable "to claims arising out of that" category.

*Id.* at 522-23.  The court added that even if Hartford's interpretation of Exclusion B.4

was reasonable, "the reading offered by AU, the insured, is more than reasonable," and

Washington law requires any ambiguity to be resolved in favor of the insured.  *Id.* at

523.

Hartford counters *Australia Unlimited* by pointing to three decisions of federal

district courts that (it says) interpret Exclusion B.4 the same way Hartford does:  *Integral*

*Resources, Inc. v. Hartford Fire Insurance Co.*, No. 2:14-CV-02308-R (AGRx), 2014 WL

2761170 (C.D. Cal. June 13, 2014); *Navigators Specialty Insurance Co. v. Beltman*, Civil

Action No. 11-cv-00715-RPM, 2012 WL 5378750 (D. Colo. Nov. 1, 2012); and *Native*

*American Arts, Inc. v. Hartford Casualty Insurance Co.*, No. 03 C 7233, 03 C 7234, 2004 WL

2065065 (N.D. Ill. Sept. 10, 2004).  But two of those decisions (*Integral*, 2014 WL 2761170

at *3; and *Navigators*, 2012 WL 5378750 at *9) merely quote the exclusion in background

sections and do not analyze the exclusion's language; there is no indication that the

insureds in those cases made the arguments that Cachet and ABW are making in this

case, much less that the courts considered and rejected those arguments.  The third

(*Native American*, 2004 WL 2065065 at *7) contains only two curt sentences of analysis of

the relevant policy language, again with no indication that Cachet's and ABW's

arguments were raised.[3]  None of the three decisions engage in the careful textual

analysis found in *Australia Limited*.

As was true with respect to their interpretation of the coverage clause, Cachet's

and ABW's interpretation of Exclusion B.4 is not without difficulties.  Again, Cachet

and ABW interpret Exclusion B.4 to say, in essence, "if the underlying policy covers *any*

claim arising out of 'personal and advertising injury,' then this umbrella policy covers

*all* claims arising out of 'personal and advertising injury.'"  There are at least two

problems with interpreting Exclusion B.4 in this manner:

First, if Cachet and ABW are correct, then it is hard to discern a purpose for the

second clause of the exception.  The first clause of the exception—"This exclusion does

not apply if 'underlying insurance' is applicable to 'personal and advertising

injury'"—would seem to do all of the work that Cachet and ABW say is done by the

---

[3]Cachet and ABW suggest that the language of the exclusions at issue in the
*Native American* case may have been (at least in part) materially different from the
language of the exclusions at issue in this case.  In particular, Cachet and ABW say that
Exclusion B.4 in the *Native American* policies may have included the definite article
"the" in front of "personal and advertising injury."  If the exclusions were indeed
different, the persuasive value of *Native American* would be eroded even further.

entire exception.  What, then, is the purpose of the second clause—". . . and to claims arising out of that 'personal and advertising injury'"?  How could underlying insurance be applicable to personal and advertising injury but not to claims arising out of that personal and advertising injury?

Second, if Cachet and ABW are correct, then Exclusion B.4 is weird.  Why would Hartford or any other insurer agree that it will not provide any coverage of any claim arising out of personal and advertising injury—unless the underlying policy covers, say, claims for malicious prosecution (a type of claim that is rarely brought, that is rarely successful, and that is relatively cheap to defend), in which case the umbrella policy will cover *all* claims arising out of personal and advertising injury, including all trademark and copyright claims (types of claims that are often brought, that are often successful, and that can be extremely expensive to defend)?

Cachet's and ABW's interpretation of Exclusion B.4 is thus problematic, but the Court cannot find that it is unreasonable.  After all, a unanimous panel of the Washington Court of Appeals interpreted Exclusion B.4 exactly as Cachet and ABW do.  And it is hard to have sympathy for Hartford.  Follow-form clauses are ubiquitous in the insurance industry, and it is easy to draft clear follow-form coverage.  Hartford demonstrated that fact when, after the Washington court's decision, Hartford added an endorsement to its standard umbrella policy entitled "FOLLOWING FORM

ENDORSEMENT – PERSONAL AND ADVERTISING INJURY."  The endorsement replaced Exclusion B.4 with language that made it crystal clear that the umbrella policy followed form to the underlying policy:  "[I]n no event shall any 'personal and advertising injury' coverage provided under this [umbrella] policy apply to any claim or 'suit' to which 'underlying insurance' does not apply."  Cachet Compl. ¶38; ABW Compl. ¶ 41.[4]  *That* is what follow-form coverage looks like.

Once again, each party's interpretation of a clause is reasonable but flawed—and once again, the Court must find that the clause is ambiguous and resolve the ambiguity in favor of the insureds.[5]  Because Cachet's and ABW's complaints plausibly allege that Hartford breached the terms of the insurance policies when it refused to defend or indemnify its insureds in connection with the underlying actions, Hartford's motions to dismiss are denied.

---

[4]Because the events triggering coverage in these cases occurred before the umbrella policies were amended, the new language does not apply to the current disputes.

[5]Cachet and ABW argue that Hartford is collaterally estopped from challenging their interpretation of Exclusion B.4 by the decision of the Washington Court of Appeals in *Australia Unlimited*.  The Court is skeptical of this argument, but, because the Court agrees with the Washington court on the merits, the argument is moot.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the defendants' motions to dismiss [Cachet ECF

No. 41; ABW ECF No. 43] are DENIED.

Dated:  February 5, 2016                 s/Patrick J. Schiltz
                                         Patrick J. Schiltz
                                         United States District Judge